## FARRIS v. ALLSTATE INS. CO.

### No. 15485.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 12, 1954.

Fay W. Prescott, Fort Worth, for appellant.

Cantey, Hanger, Johnson, Scarborough & Gooch, and Peveril O. Settle, Jr., Fort Worth, for appellee.

MASSEY, Chief Justice.

From a summary judgment in behalf of Allstate Insurance Company voiding a policy of automobile collision insurance and denying A. E. Farris, the insured thereunder, right to maintain an action for recovery of benefits claimed to have accrued on account of damage to the automobile insured thereby, Farris appeals. A. E. Farris was plaintiff in the trial court.

Judgment affirmed.

On date of July 4, 1952, A. E. Farris experienced a collision or upset of his

automobile, which resulted in damage to the same contended to amount to $1,550 under the measure of damage provision of a $50 deductible collision insurance policy. He claimed $1,500 of the Allstate Insurance Company, which had issued such policy to him, as the amount the Insurance Company owed him under the contract because of such damage. The Insurance Company denied liability in September, 1952, tendering back to Farris the amount of the premium he had paid upon the policy. Liability was denied because during the two year period immediately prior to the date the policy was issued there had been a cancellation of a policy of automobile insurance in effect upon an automobile owned by Farris. Farris admits this. It was the Company's contention that such entitled it to avoid liability since the policy was issued upon Farris' representation and warranty that he had not had such character of policy canceled within such period.

Thereafter Farris brought suit for the $1,500, and Allstate Insurance Company countered with a prayer that Farris take nothing by his suit, but that the policy sued upon be canceled and that the Company be relieved of all obligation in connection therewith. The Company moved for a summary judgment and a hearing was had thereon upon which there was a showing from Farris himself that there had in fact been a cancellation of a policy of insurance issued to him by the Resolute Fire Insurance Co. upon the same automobile insured by the policy in question, and that such cancellation occurred in January of 1952, immediately prior to the time the policy in question was applied for and issued.

Provisions of the written policy were to the effect that part of the consideration from Farris, in reliance upon which the Company had issued the policy, was his statement or representation that "During the past two years, with respect to the named insured * * * no insurer has cancelled or refused any automobile insurance. * * *"

A summary judgment was rendered in favor of the Allstate Insurance Company. A. E. Farris appealed.

■ It is the inherent and inalienable right of every man freely to deal or refuse to deal with his fellow men. Competent persons ordinarily have the utmost liberty of contracting, and their agreements voluntarily and fairly made will be held valid and enforced in the courts. Parties may incorporate in their agreements any provisions that are not illegal or violative of public policy. 12 Am.Jur., p. 641, sec. 149. Insurance companies may insert in their policies as many provisions restricting their liability as they may deem proper, if such provisions are not unreasonable or contrary to public policy. Blashfield's Cyc. of Automobile Law and Practice, sec. 3475.5.

The policy of insurance was issued following the making of application therefor by Farris, and following an oral discussion between Farris and an agent of the Insurance Company. Whether his authority was merely that of a soliciting agent or was indeed that of a general agent we do not consider material in this case. It was the testimony of Farris, himself, that he knew that he had not made a contract by his conversation with the agent. He knew that he did not have a contract with the Insurance Company for one year of collision insurance coverage until he received subsequent confirmation that such Company did agree to insure him for such period. His information in this respect was first obtained when he received the policy itself through the mail. He did not read the policy nor the "declarations" section thereof containing the language reciting the statement or representation in question, which was on a short form stapled to the contract. He merely assumed that the policy evidenced the fact that he had the insurance he desired, and filed it among his other papers. The fact that the recited provision appeared in the "declarations" became known to him during the course of or subsequent to his conversation with the adjuster the Insurance Company sent to him after he sustained the accident of

July 4, 1952. The adjuster asked him if he had ever had any insurance canceled, and he told the adjuster that the Resolute Fire Insurance Company had canceled his automobile insurance in January of that year.

In view of the manner in which the contract of insurance was issued, received and finally made in this instance, it was a unilateral contract, the terms and provisions of which were set forth for the first time in detail by the language of the policy itself. It became a final contract between the parties upon the delivery by the Insurance Company and the unqualified acceptance by Farris. Blashfield's Cyc. of Automobile Law and Practice, sec. 3471. A person who accepts an instrument purporting to be a contract thereby assents to its terms, though he does not in fact know what they are, and will not be permitted to say that he did not intend to agree to them. 10 Tex.Jur., p. 101, sec. 58; 24 Tex.Jur., p. 689, sec. 20. The courts appear to be unanimous in holding that a person who, having the capacity and an opportunity to read a contract, is not misled as to its contents and who sustains no confidential relationship to the other party, cannot avoid the contract on the ground of mistake if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read it. 12 Am.Jur., p. 629, sec. 137. The same would be true as to other forms of acceptance besides that by way of signature. Blashfield's Cyc. of Automobile Law and Practice, sec. 3476.

In connection with the policy in question it is acknowledged that there was a "binder" or "binding receipt" issued by the Company's agent who took Farris' application for the policy, and which operated to afford to Farris from the Allstate Insurance Company insurance for a thirty day period before the policy itself was issued. This fact we do not deem to be material here, for in this instance it was the issuance of the policy by the Company and acceptance by Farris which created the contract sued upon, and this issuance and acceptance was prior to the date of the loss upon which Farris made claim for benefits under the policy. We are not called upon to determine the availability of the same defense here advanced had the loss occurred while the "binder" was purportedly in effect, for no occasion to do so existed after the policy contract was issued and accepted. Since the written terms and provisions of the policy recited that it was issued upon the statement and representation of Farris that no automobile insurance had been canceled with respect to him within a two year period, Farris must be held to have expressly contracted in this regard, and the recitation had the effect of an affirmative warranty by Farris. Blashfield's Cyc. of Automobile Law and Practice, sec. 3561; 24 Tex.Jur., p. 899, sec. 164, and p. 928, sec. 181.

Furthermore it is our opinion that the only parol evidence which was warranted of consideration upon the summary judgment proceedings was that establishing the fact that the Resolute Fire Insurance Company had canceled a policy of automobile insurance it had with Farris within the two year period prior to the date of the policy in question. With this fact established the only thing necessary to be done is to determine from the contract itself whether the Company is entitled to have the contract voided and its purported obligations upon the Company avoided. There are neither pleadings nor evidence in the record to the effect that Farris was fraudulently induced to accept the contract despite its provisions in the premises, or that he was otherwise lulled into a sense of security in the insurance he thought he had. Indeed, the evidence, construed most favorably to Farris, is quite to the contrary. In view thereof a legal construction of the contract and the obligations of the parties thereunder bring us to an inevitable conclusion that the Company is entitled to avoid the liability that Farris seeks to impose upon it and that Farris may not enforce the contract as against the Insurance Company.

Whether the facts affirmatively warranted in such an instance are true or not,

or whether the warranting party actually made them or not, since the policy was issued in reliance thereon, and since it was delivered to the warranting party as the insured party thereunder, and since he had the capacity and opportunity to read and determine the provisions thereof, and since there did not exist any rare or special circumstance which excused his failure to so read and determine such provisions, but instead retained the policy, then as a matter of law he must be held to have adopted such provision as his own and to have accepted the contract subject to the opportunity thereby afforded to the Insurance Company to avoid liability thereunder should it discover the fact that the Resolute Fire Insurance Company had canceled his previous policy of automobile insurance within the two year period immediately prior to the period covered by the later policy. Texas State Mutual Fire Insurance Co. v. Richbourg, Tex.Com.App., 1924, 257 S.W. 1089, and cases therein cited; Lindley v. Franklin Fire Insurance Co., 1941 137 Tex. 196, 152 S.W.2d 1109; Sublett v. World Insurance Co., Tex.Civ. App.1949, 224 S.W.2d 288, Dallas; Taylor v. American Liability Co., 6 Cir., 1931, 48 F.2d 592, certiorari denied 284 U.S. 659, 52 S.Ct. 28, 76 L.Ed. 559.

It should be remembered that prior to the receipt of the policy Farris saw the agent who took his application only the one time, and that when the application was signed for transmittal to the Company. Even should there have been authority on the part of such agent to make contracts for the Company without limitation, yet the policy contract as written must be deemed to have merged into its terms and provisions all the agreements having gone before between the parties—thus becoming itself the parties' whole and entire agreement. Lewis v. East Texas Finance Co., 1941, 136 Tex. 149, 146 S.W.2d 977. There is nothing in this case which would constitute it an exception to that rule.

Farris unfortunately has found himself in an untenable position. He must be held to have an unenforceable contract, one which embodies provisions entitling the Insurance Company at its option to avoid any liability to him thereunder. 6 R.C.L., p. 591, sec. 10.

Judgment affirmed.