Vernis FULMER, Appellant,

v.

Sam THOMPSON, Appellee.

No. 1183.

Court of Civil Appeals of Texas, Tyler.

Oct. 19, 1978.

Rehearing Denied Nov. 16, 1978.

Marion G. Holt, Holt & Tatum, Nacogdoches, for appellant.

C. A. Keeling, Badders & Keeling, Nacogdoches, for appellee.

McKAY, Justice.

This is a personal injury suit arising from an alleged assault and battery upon appellee, Sam Thompson, by appellant Vernis Fulmer. Trial was before a jury; and, based upon the jury verdict, the trial court rendered judgment for appellee for $151,-500.

It was alleged in appellee's pleading that appellant committed an assault and battery upon appellee with intent to maim, murder or seriously injure appellee by striking appellee across his face with a 22-caliber rifle, then shooting appellee in the left leg with the rifle resulting in serious and permanent injuries. Appellee also sued for loss of earning capacity, mental pain and anguish and for exemplary damages. Appellant answered by general denial and that appellee was a trespasser upon premises owned by appellant in that appellee was parking his motor vehicle on a parking lot at appellant's apartment building so as to block the city garbage truck from removing the garbage from the premises. Appellant also alleged he acted in self-defense. The jury found that appellant committed an assault and battery upon appellee, and awarded damages of $50,000 for past and future physical and mental pain and suffering and loss of earnings in the past and which will be reasonably suffered in the future, and $1,500 for past medical and hospital expenses. The jury also awarded exemplary damages of $100,000.

The special issues submitted to the jury and the jury's answers follow:

### "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that the Defendant, VERNIS FULMER, committed an Assault and Battery upon the Plaintiff, SAM THOMPSON?

"Answer: 'We do' or 'We do not.'

"ANSWER: 'We do.'

### "SPECIAL ISSUE NO. 2

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate SAM THOMPSON for his injuries, if any, which you find from a preponderance of the evidence resulted from the occurrence in question?

"You may consider the following elements of damage, if any, and none other:

"a. Physical pain and mental anguish in the past.

"b. Physical pain and mental anguish which, in reasonable probability, he will suffer in the future.

"c. Loss of earnings in the past.

"d. Loss of earning capacity which, in reasonable probability, he will sustain in the future.

"Answer in dollars and cents, if any.
"ANSWER: '$50,000'

## "SPECIAL ISSUE NO. 3

"Find from a preponderance of the evidence the reasonable expenses, if any, for necessary medical and hospital care received by SAM THOMPSON in the past for treatment of his injuries resulting from the occurrence in question.

"Answer in dollars and cents, if any.
"ANSWER: '$1,500'

## "SPECIAL ISSUE NO. 4

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would be compensation for the reasonable expenses, if any, for necessary medical and hospital care which SAM THOMPSON will, in reasonable probability, require in the future for treatment of his injuries resulting from the occurrence in question?

"Answer in dollars and cents, if any.
"ANSWER: '0'

"If you have answered Issue No. 1 'We do,' then answer Issue No. 5; otherwise do not answer Issue No. 5.

## "SPECIAL ISSUE NO. 5

"What sum of money, if any, do you find from a preponderance of the evidence that SAM THOMPSON should be awarded again [sic] VERNIS FULMER as exemplary damages?

" 'Exemplary damages' means an amount which you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount which may have been found by you as actual damages.

"Answer in dollars and cents, if any.
"ANSWER: '$100,000' "

Appellant's first five points essentially complain that there is no evidence to support the jury's answers to issues 1, 2 and 5 because there is no evidence that the appellant was the aggressor and the undisputed evidence shows that appellee was the aggressor. We disagree with these contentions.

■ We shall examine the record to determine if there is no evidence of probative force to support the jury's answers—considering only the evidence and inferences tending to support the findings and disregarding the evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

Appellant was the owner of the Villa Apartments in Nacogdoches, and the manager of the apartments was John Phillips. Complaints had been made to Phillips, who relayed them to appellant, that appellee had been parking his automobile adjacent to a garbage receptacle which prevented the city garbage truck from removing the garbage from the premises and thereby prevented the tenants at the apartments from depositing their garbage in the receptacle because it remained full. On the occasion of the confrontation between appellant and appellee, appellant went to the apartment house, and he and Phillips went to the apartment of Dottie Phillips, knocked on the door and appellee opened the door. Appellant and appellee then had a discussion about appellee's van being parked by the garbage bin and about whether appellee was spending the night in Dottie's apartment. Appellee testified that appellant while in front of the apartment grabbed his shirt and appellee pushed his hands away; that he followed appellant to his car because he then learned from Dottie that appellant had called his office and asked his employee a number of personal questions about him, and that he told appellant he did not want him to call his office asking any personal questions because it was not any

of his business; that appellant asked him what he was going to do about it; that he turned to walk away and he heard appellant's car door open, and he turned around and saw appellant getting out of his car with a rifle; that appellant then hit him on the side of the head with the gun and then shot him in the leg; that he was not at the side by the window and did not lean over in the window of appellant's car and touch him; that when appellant came out of the car with the rifle he did not advance toward him; that after he was struck with the gun he did not "go after him [appellant] like you was wanting to get him," and he was not able to do so.

Appellee further testified that appellant then shot him in his left leg and the bullet shattered a bone between the knee and the thigh and barely skimmed the skin on his right leg.

The witness John Phillips testified that after appellant got out of his car with the rifle appellee was backing up; that appellant then hit appellee with the rifle on the side of the head; that then there were two shots and appellee fell and "was laying on the ground screeming [sic]." Phillips further testified that after appellant struck appellee with the rifle he did not see appellee reach for appellant after that time, and that appellee did not advance toward appellant but was backing away.

Although some of John Phillips' testimony was favorable to appellant we are of the opinion that there is ample evidence in the record to support the jury finding that appellant committed an assault and battery upon appellee. If these points may be construed as insufficient evidence points we hold the evidence is factually sufficient to support the jury's answers to issues 1 and 5.

With respect to issue 2 appellee testified that he had severe pain in his left leg immediately after being shot, that the pain so continued while he was hospitalized in Nacogdoches and Lufkin; that he had surgery on his left leg at Lufkin and remained in the hospital about two weeks; that when released from the hospital appellee was able to walk only by the use of crutches, and that he used them for five or six months; that when he was released from the hospital the doctor told him to begin exercising his leg as soon as he could to strengthen it, but the leg was not as strong as it was before the injury; that the exercises were painful; that his leg aches and "just bothers me at times"; that since his leg was shot he had worked as a beautician which required him to stand on his feet, and his leg "bothers" him at night and he had a limp on that leg at times; that he was not able to drive his van motor vehicle (standard shift) until about the time he ceased using crutches; that during the months he could not drive the van, no one called on his customers, and that his local store barely made enough money to pay the rent and his clerical help; that at the time he was shot he was netting approximately $300 to $350 per week from his beauty supply business.

Appellee further testified that he could not walk as fast nor carry as much weight as he formerly could, and therefore could not call on as many customers as before; that his customers had begun to get beauty supplies from others during the period he was absent, and when he began calling on them again, he did not have enough business to make any profit which resulted in closing his business; that he then did odd jobs for a paint contractor but could not stand on a ladder to paint.

Appellee testified that he worked temporarily for three or four days at Port Arthur as a security guard during a strike at an oil company plant but no squatting, stooping, bending or lifting was required. Later, in June 1975, appellee moved to Jacksonville where he began working five days a week as a hairdresser and later bought the beauty shop where he worked, but he could not make any money there and standing all day caused his leg to hurt at night so he sold the shop. Appellee testified he was unemployed at the time of trial.

Appellee was a member of the Wrangler Club, a roping organization, and he participated in roping contests at rodeos and other places. He had placed at some jackpot rop-

ing contests, and he owned two horses one of which he rode as a roping horse. He testified he was unable to compete after he was shot as he previously had done, and he had never placed since his injury to his leg.

Mrs. Dottie Thompson, wife of appellee, who was his girl friend at the time he was shot, corroborated appellee's testimony concerning his diminished physical ability to ride and rope after he was shot compared to his ability before he was hurt. She testified appellee complained of pain in his leg at night during the time he worked at the beauty shop in Jacksonville, and that he limped.

■ It is our view that there is some evidence to support the jury's answer to issue 2; and if appellant's points are considered to be insufficient evidence points, then we hold the evidence is factually sufficient to support the answer of the jury to this issue.

■ By his sixth point appellant again complains that there is no evidence to support the jury's answer to issue 2 because there is no evidence that appellee "would suffer pain and mental anguish in the future or that he would have a loss of earning capacity in the future." We overrule this point. The trial court properly instructed the jury that, "you may consider the following elements of damage, if any, and none other," and then followed with the elements: physical pain and suffering in the past and in the future, loss of earnings in the past, and loss of earning capacity which in reasonable probability appellee would sustain in the future. The amount which an injured party may earn in the future is always uncertain and the finding of an amount must be largely left to the sound discretion of the jury, *Texas Farm Products Co. v. Leva*, 535 S.W.2d 953, 956 (Tex.Civ. App.—Tyler 1976, no writ), and if appellee's earning capacity is impaired, "the extent of his loss can best be shown by comparing his actual earnings before and after his injury." *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710, 712 (1943). The record reveals that the trial in the instant case was held approximately four years after appellee's

injury, and there is evidence in the record of his pain, his earnings and his physical ability during that period.

■ It is contended in appellant's point seven that the trial court committed error in refusing to permit appellant to examine the jury on voir dire on his defense of self-defense. On November 29, 1977, appellant filed an amended pleading alleging for the first time a defense of self-defense. On December 5, 1977, appellee filed a special exception to appellant's pleading alleging that it violated the rule (Rule 63, T.R.C.P.) against filing amended pleadings within seven days of trial without leave of the court, and on the same day the trial court sustained the special exception. However, during his voir dire examination of the jury, and before the trial court announced that he reaffirmed his ruling on appellant's late pleading and sustained appellee's objection to the voir dire of self-defense, appellant, in person, told the jury panel his defense was self-defense, and that he shot appellee only to save himself, and such statement was not withdrawn nor was the jury instructed not to consider it. Appellant testified that he acted only in self-defense. Before the court's charge was prepared the record reflects that appellee's counsel announced to the court that there was no objection to the court including an instruction and charge to the jury on appellant's plea of self-defense. The court did charge the jury on self-defense, and there was no objection by appellant to such charge. Appellant's counsel argued to the jury that appellant was justified in shooting appellee because he was acting in self-defense.

The record does not reveal any objection by appellant to the court's action in sustaining an exception to appellant's pleading filed within seven days of the trial. It is our view that the appellant having told the jury panel his defense was self-defense, the appellant having testified in detail to self-defense, the court having charged the jury on self-defense, and appellant's counsel having argued to the jury on self-defense, then if there was any error in the court sustaining an objection to appellant's further voir

dire of self-defense such error was harmless. Rule 434, T.R.C.P. Appellant did not request an issue on self-defense. Appellant's seventh point is overruled.

Appellant's eighth point[1] complains of the repeated attempts of appellee's counsel to introduce a written statement of the witness John Phillips. The point complains of a number of occasions when such offer was made, and of two or more sidebar remarks of counsel. The point is too general and is multifarious. Although briefing rules are to be liberally construed (Rule 422, T.R.C.P.), the complaint concerns several separate rulings of the court not all of which were on the same legal question. Furthermore, the record indicates that the trial court sustained appellant's objection each time it was made on each point. Appellant did not ask the jury be instructed not to consider the remarks of appellee's counsel in offering the written statement of the witness, John Phillips, but the trial court did so instruct the jury on one occasion. If there was error it was harmless. The point is overruled.

By his ninth point appellant maintains that the trial court erred by admonishing and instructing appellant in the jury's presence that he, personally, was not permitted to question any other witness after appellant had personally already questioned and cross-examined witnesses, and after he had personally testified as a fact witness in the case. There was no objection to the statement of the court,[2] and appellant contends that for him or his counsel to object would only have magnified the error and prejudiced the jury. Appellant argues that for

1. A new trial should be granted in this case because the plaintiff's attorney continually over the objections of the attorney of the defendant and objections of the defendant himself, and after the court had on numerous occasions sustained the defendant's objections thereto, repeatedly attempted to introduce a written statement made by the plaintiff's witness John Phillips made to the police shortly after the incident in question is alleged to have occurred, and during the trial of said case the plaintiff's attorney repeatedly attempted to introduce said statement, made references to alleged contrary statements made by John Phillips in said statement and sidebar remarks about contrary statements being made and about John Phillips not being their witness, all over the objections of the defendant and the order of the court sustaining said objections and such repeated efforts on the part of plaintiff's attorney to introduce said statement and make reference to alleged contrary statements in the written statement and about John Phillips not being plaintiff's witness, when said witness was called by the plaintiff, was so manifestly improper and grossly prejudicial that the defendant could not get a fair and impartial trial of the case before the jury.

2. "THE COURT: Just a moment, Counsel. Let the record show, please in this cause that Mr. Marion G. Holt has heretofore been designated as the attorney of record in this cause, by the parties all being present. And likewise, he has also been designated as the lead counsel and according to the rules of civil procedure. And has maintained that position throughout the course of this trial. Let the record further show that the defendant in this cause has further been represented by his son-in-law, the honorable Neil Davidson on Dallas County Bar, who is in attendance of this trial and participated therein for a period of two full days, before being excused by the Court, he returned to his home. And he remains as Counsel of record in this cause to participate further as he may desire. Let the record further show, please, that the Court proceeded [sic] the Defendant himself to participate in the trial of this case. During the early stages, thereof. And that the Defendant has now testified, both on—or that is the Defendant has completed testifying at length as a witness in the cause. And in accord with the rules of civil procedure of this state, the Court does now find that he has competent, adequate counsel at the counsel table, who has been here as lead counsel throughout the course of this trial. And therefore, under the law, he is precluded from now representing himself in this cause. The Court having delayed invoking that matter, until after the Defendant took the stand, after him having testified, the Court deemed it appropriate to invoke the matter. Therefore, the examination of this witness, the trial of this case shall be conducted by the lead counsel, the honorable Marion G. Holt, a very capable and competent counsel of this bar. Mr. Holt, you may have the witness. If the parties desire further clarification of that Ruling, the Court will be happy to furnish it to you.
"MR. HOLT: Is the Court ready for me to proceed, your honor? I have no—
"THE COURT: Yes. There being no question concerning the matter, you may proceed with the witness."

the court to permit appellant personally to question witnesses and then before the jury prohibit him to further do so amounted to criticism of him and would cause the jury to be prejudiced against him.

 While it would have been more appropriate for the trial court to have made the statement out of the presence of the jury we perceive no reversible error. A trial judge is vested with broad discretion in the manner in which a trial is controlled, and a judgment will not be reversed unless probable prejudice is shown. *Texas Employers' Insurance Association v. Garza*, 557 S.W.2d 843, 845 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *Best Investment Co. v. Hernandez*, 479 S.W.2d 759, 761 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.).

Rule 7, T.R.C.P., provides, "Any party to a suit may appear and prosecute or defend his rights therein, either in person or by an attorney of the court." Appellant was represented by competent counsel, and it has been held that the rule does not require that a party to a suit be permitted to prosecute his rights both in person and by an attorney. *West v. Houston Lighting & Power Co.*, 483 S.W.2d 352, 358 (Tex.Civ. App.—Houston [1st Dist.] 1972, no writ).

Rule 8, T.R.C.P., provides that the attorney first employed shall be considered leading counsel and shall have management and control of the case, and an attorney of record is defined in Rule 10 as "one who has appeared in the case, as evidenced by his name subscribed to the pleadings . . ; and he shall be considered to have continued as such attorney to the end of the suit in the trial court, unless there is something appearing to the contrary in the record." According to the statement of the trial court appellant had two attorneys of record, Marion G. Holt of Nacogdoches, and Neil Davidson of Dallas. We overrule point 9.

 It is contended by appellant in point ten that there was error by the court in sustaining an objection to a statement by appellant's counsel in his argument to the jury that appellee testified that Dr. Mahon

told him he needed the metal plate in his leg removed. The record reveals that appellee testified that Dr. Mahon did tell him "that I should have the leg checked about taking the plate and everything out of it and to stay off of it a while and it was just bruised up and stay off it a while." Dr. Mahon testified that he had seen appellee only once, that appellee did not make any complaints to him about his leg, and that appellee did not complain of any injury to his leg from a gunshot wound. In further testimony Dr. Mahon said he had never recommended to appellee that "these plates be removed or would have to be removed."

The specific argument of appellant's counsel to which objection was sustained was: "Mr. Thompson takes the stand and tries to tell you all the trouble he's been having about the—Doctor Mahon over there telling me I got to have the plates out." After the court sustained the objection to that statement as being outside the record, appellant's counsel continued: "Said he was treated over there when he bruised this leg. They told him if he kept having trouble he was going to have the plates out. Dr. Mahon told him that." An objection that such argument was outside the record was again sustained. The record reveals that appellee had been to Travis Clinic in Jacksonville on another occasion and had seen a Dr. Baggett, and it is reasonable that appellee confused the doctors. However, there is, in our view, no reversible error. The second statement by appellant's counsel to which an objection was sustained was, "Dr. Mahon told him that." Appellee testified it was Dr. Mahon, but Dr. Mahon testified he did not say anything to appellee about the leg plates.

The jury heard all of the evidence from the witnesses and the jury was entitled to judge the credibility of the witnesses and the weight to be given their testimony. It would appear that it was an immaterial question whether Dr. Mahon or some other doctor told appellee (according to appellee's testimony) that it might be advisable or necessary to remove the plates. If there was any error, and we find none, then we believe that such error did not amount to

such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P.

A more difficult question is presented by appellant's points eleven and twelve wherein he complains that there was error in the action of the trial court in overruling his objection to and motion for mistrial due to the jury argument of appellee's counsel. Appellant's witness Copeland testified that he smelled alcohol on appellee's breath while the latter was lying in the emergency room at the hospital after appellee had been transported there by ambulance. Copeland also testified that he had known appellee since 1971 when both of them had been in the sheriff's posse.

Appellant's counsel said in argument to the jury:

"Then, Mr. C. B. Copeland, an experienced peace officer, a friend of Mr. Sam Thompson, was in the emergency room when they brought him in, got up close and talked to him and smelled alcohol on his breath. His own friend came here and testified. Do you think Mr. Copeland wanted to testify against his friend? Especially to something that was not true, would he come here and prefabricate something like that against his friend? And Jerry Weems came here, a man who's been a peace officer half his life and he's still a young man, said he saw him at the emergency room and he had alcohol on his breath. Sam Thompson is not telling you the truth. I submit to you that Sam Thompson was out there with too much to drink and he was mean and as Mr. Fulmer testified in his own words he was belligerent."

In his closing argument appellee's counsel said:

"Well, let me state this. They talk about Mr. C. B. Copeland being his friend and coming up here and testifying about smelling alcohol on his breath. Well, you know what, he also wanted to tell you that the man was drunk, but he never could get that in the record, but you heard it. And you know what he was bas-ing that on? The fact that he smelled alcohol on his breath. He never did see—even see the guy move, he was groaning of pain and moaning, there was doctors and nurses all around him at the time he was in there, yet I guess he pushed those doctors and nurses back and said here I want to smell of this man's breath. I submit to you he ever got close to the man enough out there to smell his breath that night. *And the only reason he come in here and told you that he smelled alcohol on his breath was because of some green stuff that comes out of your pocket back here."* [Emphasis added.]

Appellant's counsel then objected that the argument was outside the record, "highly immaterial and prejudicial," that no instruction would cure it, and moved for a mistrial. The trial court overruled the objection.

Appellant cites and relies upon *Southwestern Greyhound Lines, Inc. v. Dickson,* 149 Tex. 599, 236 S.W.2d 115 (1951). Appellee argues that, from the evidence, he was entitled to all reasonable, fair and legitimate inferences, and that latitude is afforded him to do so; that limitations will not ordinarily be imposed so long as his hypothesis is supported by the evidence and offered in good faith; that counsel may express his own conclusions from the evidence even though they appear to be illogical or improbable; and that he may draw inferences that appear to be not the most reasonable ones, as well as conclusions that are, in fact, erroneous. It is further argued by appellee that his remark to the jury was a reasonable deduction from the evidence and a logical reply to the argument of appellant's counsel.

"Much latitude is allowed counsel in replying to his opponent's argument. Hence an argument which is provoked or invited by an opponent's argument is not objectional when directed to the subject matter introduced by the opponent, even though without such provocation it might have been improper." 3 McDonald's Texas Civil Practice sec. 13.14 (1970); *Hartford Accident & Indemnity Co. v. Thurmond,* 527

S.W.2d 180, 193 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.).

Each case of improper argument must be considered upon its own peculiar facts. *Southern Pacific Co. v. Hubbard*, 156 Tex. 525, 297 S.W.2d 120 (1956). Factors considered by the courts in determining the effect of improper argument on the verdict include the nature of the argument; whether such argument was merely a single instance of improper argument or was repeated improper argument; whether it was in response to argument of opposing counsel; whether the argument pertained to a closely contested issue; the amount of the verdict; whether an objection was made, and if so, overruled, and was repeated; and whether any instruction to disregard the argument was given to the jury by the court. 9 Baylor Law Review pp. 112, 115.

To obtain a reversal of a judgment based upon an error in the trial court an appellant has a two-pronged burden. First, he must show there was error in fact, and secondly, that such error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P.; *Bristol-Myers Co. v. Gonzales*, 548 S.W.2d 416, 429 (Tex.Civ.App.—Corpus Christi 1976), reversed on other grounds, 561 S.W.2d 801; *Consolidated Underwriters v. Whittaker*, 413 S.W.2d 709 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.).

In our view, the argument of appellee's counsel was clearly improper. We do not agree that it was invited argument. There was nothing in the record upon which the argument could have been based. In our opinion the trial court should have sustained appellant's objection to the argument complained of. The second consideration then presents itself: Was the improper argument reasonably calculated to cause, and did it probably cause, the rendition of an improper judgment? That question is to be determined as a matter of law in the light of the record as a whole. *Texas Sand Co. v. Shield*, 381 S.W.2d 48, 58 (Tex. 1964); *Aultman v. Dallas Railway & Termi-*

*nal Co.*, 152 Tex. 509, 260 S.W.2d 596, 600 (1953); *Carter v. City of Tyler*, 454 S.W.2d 771, 775 (Tex.Civ.App.—Tyler 1970, writ ref'd n. r. e.).

We quote from *Texas Sand Co. v. Shield*, supra at 58:

"However, regardless of the type or category in which an argument might fall, the true test is as laid down in *Texas Employers' Ins. Ass'n v. Haywood*, 153 Tex. 242, 266 S.W.2d 856 (1954), the test that has been consistently followed by this Court since the adoption of Rules 434 and 503, supra. In the *Haywood* case, we said: 'The true test is the degree of prejudice flowing from the argument—whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict.' "

The courts in Texas have held that an argument that accuses or infers that a witness was paid to testify as he did is reversible error when the witness had not been impeached and when there is nothing in the record upon which to base a suggestion that the witness had been bribed.

In *Airline Motor Coaches, Inc. v. Campbell*, 184 S.W.2d 532, 534-5 (Tex.Civ.App.—Beaumont 1944, writ ref'd w. o. m.), an attorney argued: "*I don't know, Gentlemen of the Jury, whether somebody greased his palm or not,* but I will say when he was in this court house, and after they didn't put him on, I will say something happened when he testifies like he did." [Emphasis added.] The court held that the quoted argument "goes beyond the bounds of legitimate argument when there is no impeachment of the witness in evidence and no testimony in the record upon which to base the suggestion that the witness had been bribed," and it was held to be reversible error.

In the case of *Rogers v. Broughton*, 250 S.W.2d 606, 608-9 (Tex.Civ.App.—Austin 1952, writ ref'd n. r. e.), in referring to several witnesses who testified appellee's

counsel said in his jury argument, "If they were not interested, and if they were not paid to come up here, by Dr. Rogers, why do you think they came up here and took the witness stand?" The court said, "In our opinion the bounds of propriety were exceeded when counsel strongly intimated that all of appellants' witnesses testified solely from self-interest and without regard for the truth when there was nothing in the record to warrant such defamation." The argument was held to be reversible error.

The following argument to the jury in *Cross v. Houston Belt & Terminal Railway Co.*, 351 S.W.2d 84, 86–7 (Tex.Civ.App.— Houston 1961, writ ref'd n. r. e.), was held to be incurable and reversible error:

"'[T]hat this is a case where a man who had a pre-existing condition, and for whatever reason he laid down or was out in that yard, he was afforded the best medical treatment Harris County could offer, and he refused it, and he placed himself in the hands of these attorneys who had every reason in the world from their financial interest in this case to do everything that they can to hoodwink this Jury from the time that they went shopping for doctors and they have been trying to put in twisted evidence they do everything they can to try and—'"

An objection was overruled by the court in these words: "'Counsel I think you can draw emphasis from the testimony.'"

The objected to argument continued:

"'Well, I think their conduct describes it better than anything and has shown it, that when this man went to hire them, when he could have gotten the treatment that he needed, and when he hired these attorneys it was just a question of manufacturing testimony, and they went out and hire any witnesses they can get to say things that you have heard from this witness stand here. I don't know of any other way that we could have met it, because it is not pleasant to stand up here and have to criticize people like this, but when they can sue you for hundreds of thousands of dollars on manufactured evidence like this, when all they have to do is pay a $25 filing fee to bring a case like this into court—'."

In *Cross*, as in the instant case, the court failed to sustain an objection to the improper argument, and, in effect gave its approval to the prejudice injected into the case.

The argument in *Southern Pacific Co. v. Hubbard*, supra, 297 S.W.2d at pp. 123–4, was held to be reversible error. A portion of that argument was:

"Of course, according to them, anybody that sues the railroad for injuries and their wife and anybody that says 'good morning' to 'em is probably a thief and a liar, but you saw Mrs. Hubbard here and you saw the other people here and you saw Hubbard here. . . .

. . . . .

"Well, when I see this man and know him well, they come in and say because, in common with dozens of others, that anybody who sues this railroad is something less than honorable, can't tell the truth, and they lie, and anybody else that comes in, even under subpoena of the Court, if they dare say anything in our favor, they are not telling the truth. And that is calculated to provoke a person."

The court held the argument attacked the integrity of officials and counsel of the railroad and appealed to the passion and prejudice of the jury, and such statements were not warranted by the record nor in reasonable response to any statement made by the railroad's attorney.

In our view the argument by counsel of appellee, with reference to the witness Copeland, wherein he said, "And the only reason he come in here and told you that he smelled alcohol on his breath was because of some green stuff that comes out of your pocket back here," was an accusation that the witness had been bribed, was improper and impermissible argument which was prejudicial to appellant, was not justified by any evidence in the record, and was not a fair and reasonable answer to any argument made by appellant's counsel. *Southwestern Greyhound Lines, Inc. v. Dickson*, supra.

We are of the opinion that counsel's argument complained of was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this cause. We sustain these points.

Points thirteen and fourteen complain that the damages awarded were excessive and unjust and against the overwhelming weight and preponderance of the evidence and so excessive that the jury was motivated by bias and prejudice. In view of the disposition of this appeal we do not reach these points.

For the error pointed out we reverse the judgment of the trial court and remand the cause for a new trial.