ACCEPTED
06-17-00102-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
6/5/2018 11:37 AM
DEBBIE AUTREY
CLERK

## NO. 06-17-00102-CV

**In the Court of Appeals
For the
Sixth Supreme Judicial District at
Texarkana, Texas**

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
6/5/2018 11:37:21 AM
DEBBIE AUTREY
Clerk

### RICHARD H. DREW, III
*Appellant*

VS.

### A.C.B.
*Appellee*

# APPELLEE'S BRIEF

## WRAY, WILLETT & STOFFER, PLLC

Jason M. Willett
State Bar No. 00788669
200 A. North Rogers Street
Waxahachie, Texas 75165
Telephone: (972) 938-1850
Facsimile: (972) 937-6844
Email: jason@elliscountylaw.com

Attorney for Appellee
A.C.B.

## ORAL ARGUMENT NOT REQUESTED

| RICHARD H. DREW, III. | § | IN THE SIXTH COURT OF |
| | § | APPEALS |
| *Appellant,* | § | |
| | § | |
| vs. | § | |
| | § | |
| A.C.B., | § | |
| | § | |
| *Appellee* | § | TEXARKANA, TEXAS |

## IDENTITY OF PARTIES AND COUNSEL

Appellee certifies that the following is a complete list of the parties, attorneys, and any other person who has any interest in the outcome of this lawsuit.

**APPELLANT:** Richard H. Drew, III

**APPELLANT'S ATTORNEY:** Daniel L. Barnes
Attorney at Law
306 Sixth Street
Waxahachie, Texas 75165
Telephone: (817) 300-2175
Facsimile: (972) 923-9606
Email: danielbarneslaw@gmail.com

**APPELLEE:** A.C.B.

**APPELLEE'S ATTORNEY:** Jason M. Willett
Wray, Willett & Stoffer, PLLC
200 A. North Rogers Street
Waxahachie, Texas 75165
Telephone: (972) 938-1850
Facsimile: (972) 937-6844
Email: jason@elliscountylaw.com

**TABLE OF CONTENTS**

IDENTITY OF PARTIES............................................................................2

TABLE OF CONTENTS............................................................................3

INDEX OF AUTHORITIES.......................................................................4

STATEMENT OF THE CASE......................................................................5

ISSUES PRESENTED...............................................................................7

STATEMENT OF FACTS...........................................................................8

SUMMARY OF ARGUMENT.....................................................................10

ARGUMENT AND AUTHORITIES............................................................12

PRAYER FOR RELIEF.............................................................................21

CERTIFICATE OF COMPLIANCE............................................................22

CERTIFICATE OF SERVICE.....................................................................23

# INDEX OF AUTHORITIES

## Cases

*Ater v. Ellis,*
227 S.W. 222 (Tex.Civ.App.—Amarillo 1921, writ dismissed w.o.j.) ................ 15

*DeLeon v. Hernandez,*
814 S.W. 2d 531 (Tex. App.—Houston [14th Dist.] 1991) .................................. 17

*Fulmer v. Thompson,*
573 S.W. 2d 256 (Tex.Civ.App.—Tyler 1978, writ refused n.r.e.) ...................... 18

*Operation Rescue—Nat'l v. Planned Parenthood,*
975 S.W.2d 546, 560 (Tex. 1998) ....................................................................... 12

*Priest v. Texas Animal Health Commission,*
780 S.W. 2d, 874, 875 (Tex. App.—Dallas 1989, no writ) ................................. 12

*Republic Underwriters Ins. Co. v. Mex-Tex, Inc.,*
150 S.W.3d 423, 427 (Tex.2004) ........................................................................ 18

*San Saba Energy, L.P. v. Crawford,*
171 S.W.3d 323, 337 (Tex. App.—Houston [14th Dist.] 2005, no pet.) .............. 18

*Sixth RMA Partners v. Sibley,*
111 S.W. 3d 46, 52 (Tex. 2003) .......................................................................... 17


## Rules

TEX.R.APP. P. 38.1(h) ......................................................................................... 18

| RICHARD H. DREW, III. | § | IN THE SIXTH COURT OF |
|---|---|---|
| | § | APPEALS |
| *Appellant,* | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| A.C.B., | § | |
| | § | |
| *Appellee* | § | TEXARKANA, TEXAS |

## APPELLEE'S BRIEF

Appellee, A.C.B., files her Brief, and will be hereinafter referred to as "Appellee" or "A.C.B." Appellant is RICHARD H. DREW, III, referred to as "Appellant" or "Richard" in this brief.

## STATEMENT OF THE CASE

A.C.B. filed an Original Petition, Application for Injunctive Relief and Application for Ex Parte Restraining Order on October 19, 2016 (CR, I, p. 1) That same day the Court signed a Temporary Restraining Order, which in essence, prohibited all contact or communication between the parties (CR, I, p. 20). The Order was personally served upon the Appellant (CR, I, p. 30). A Temporary Injunction hearing was held on November 2, 2016 (CR, I, p. 38). Appellant did not appear at the hearing, and a Temporary Injunction was entered by the Trial Court which included notice of a final trial setting on July 7, 2017 (CR, I, p. 39). The

Temporary Injunction was also personally served upon the Appellant (CR, I, p. 48). A bench trial was held on July 7, 2017, on Plaintiff's tort claim of civil assault and request for permanent injunction against Defendant/ Appellant (RR, I, p. 1). The Appellant appeared in person, *pro se*, but did not file an answer, motion or other request for relief of any kind. Both parties announced ready for trial. (RR, I, p. 7). No legal objections were lodged by Appellant during the trial to any testimony or evidence. The Trial Court announced its judgment from the bench on the day of trial on the record (RR, p.84-86). A Final Judgment and Permanent Injunction was signed and entered July 24, 2017 (CR, I, p. 50). Post-trial, the Appellant retained counsel and a Motion for New Trial was filed on July 25, 2017, which was thereafter denied (CR, I, p. 48). The Trial Court's Final Judgment and Permanent Injunction continued the "no contact" terms of the prior order (with a modification to remove A.C.B.'s father from the requirements of the Injunction) and awarded her monetary relief of $10,000.00, for actual damages on her assault claim. Appellee urges this Court to affirm the Trial Court's judgment.

## ISSUES PRESENTED BY APPELLANT

**ISSUE NO. 1**:    The Order granting a permanent injunction should be vacated since Plaintiff (A.C.B.) failed to establish that she was in imminent danger from the Defendant (Appellant).

**ISSUE NO. 2**:    The Order granting $10,000.00 in damages should be vacated since no evidence at trial established or proved any damages. In Plaintiff's Original Petition, Application for Injunctive Relief, and Application for Ex Parte Temporary Restraining Order, Clerk's Record, Vol. I, Pages 6-12, Plaintiff (A.C.B.) pled for attorney's fees, however, no attorney's fees were proved at trial.

## STATEMENT OF FACTS

A.C.B. resided in Hampton, Georgia (RR, I, p. 12). She was eighteen years old (RR, I, p. 12). She came to Ellis County, Texas, on October 6, 2016, to visit her father (RR. I, p. 12). Upon returning to her father's residence in Midlothian, Texas, she and her father discovered that her step-mother had committed suicide in the home (RR, I, p. 13-14). Members of both families came to Midlothian over the next day or two (RR, I, p. 15). The Appellant is the biological son of the A.C.B.'s step-mother, and lives in San Antonio, Texas. *Id.* He was 26 years old (RR, I, p. 16). On the night of October 8, 2016, family members gather at A.C.B.'s father's residence trying to process the recent events. *Id.* A.C.B. and Appellant were talking on the porch of the home (RR, I, p. 19). After everyone had gone to bed, they began kissing—which was not something they had ever done before. *Id.* It was an awkward moment, and A.C.B. testified that they agreed to stop. *Id.* At the time, the Appellant's hands were on A.C.B.'s face. He then moved his hands down to her neck, and the last thing she remembered was pressure on her neck (RR, I, p. 20). She awoke the next morning in her clothes, but without her bra and underwear. *Id.* As she began to piece together what had transpired, she felt as though the parties had sexual intercourse. *Id.*

That morning, she spoke to the Appellant about what had transpired the night before (RR, I, p. 21). She specifically asked the Appellant if they had sex, and he

confirmed that they had. *Id.* A.C.B. knew that she had not consented to such activity. *Id.*

She also testified that, as a result of the sexual encounter with Appellant, she suffered physical soreness in her groin and neck (RR, I, p. 22), had dark symmetrical bruises on her neck consistent with finger marks (RR, I, p. 24), sought medical treatment at Parkland Hospital where she underwent rape kit testing, sought follow-up treatment with multiple doctors and gynecologists (RR, I, p. 25), withdrew from college, lost her job (RR, I, p. 27), started taking antidepressants, (RR, I, p. 28) sought counselling (RR, I, p. 27), moved into a gated community with her parents (RR, I, p. 28), and was unable to sleep or rest well (RR, I, p. 28).

At trial, the Appellant generally affirmed these facts as alleged in A.C.B.'s Petition (RR, I, p. 51-55), but denied that the sexual encounter was nonconsensual (RR, I, p. 55). Although criminal charges were filed by Appellee, she concurs that no formal criminal charges had been made against Appellant by law enforcement at the time of trial (RR, I, p. 57).

## SUMMARY OF ARGUMENT

**ISSUE NO. 1:** Both legally and factually sufficient evidence was presented at trial to support the Trial Court's permanent injunction. A.C.B. established her assault claim at trial against Appellant, and the imposition of a "no contact" injunction was warranted by the evidence and within the Court's discretion. Appellant's complaint here is unclear. In parts of the Brief, he seems to suggest that A.C.B. failed to establish a wrongful act and, as a direct result, thereby failed to establish imminent harm. Alternatively, Appellant could also be arguing that A.C.B. was required to show that there was an imminent threat of an assault between the parties *happening a second time* in order to prevail on her request for a permanent injunction going forward. It is just unclear. Moreover, the fact that formal criminal proceedings against the Appellant had not been instituted as of the date of trial and that he had not been formally charged with a crime does not create an automatic basis for the Appellant to avoid injunctive relief or a civil damage claim.

**ISSUE NO. 2:** While Appellee's Original Petition did seek exemplary damages and referenced attorney's fees in the Prayer section of the Petition, A.C.B. also alleged that she was seeking "monetary relief" for her "actual damages" and "bodily injuries" proximately caused by the Appellant's assaultive conduct, and further alleged that she sought all "other and further relief to which Plaintiff may show

entitlement at law or in equity." (CR, I, p. 1-9). Ample evidence of both physical and mental bodily injuries was presented at trial to support the Trial Court's Judgment. The Trial Court did not impose a criminal fine upon the Appellant and clearly stated so on the record.

Finally, the Appellant's Brief is insufficient to provide fair notice to Appellee and this Court regarding the precise Issues Presented on appeal.

## ARGUMENT AND AUTHORITIES

**ISSUE NO. 1 RESPONSE:** **The permanent injunction was properly granted and should not be vacated.**

In order to secure a permanent injunction, A.C.B. was required to meet the following elements: 1) the existence of a wrongful act; 2) the existence of imminent harm; 3) the existence of irreparable injury; and 4) the absence of an adequate remedy at law. *Priest v. Texas Animal Health Commission*, 780 S.W. 2d, 874, 875 (Tex. App.—Dallas 1989, no writ).

The grant or refusal of a permanent injunction is ordinarily within the trial court's sound discretion and, on appeal, review of the trial court's action is limited to the question of whether the action constituted a clear abuse of discretion. *Id.*; *Operation Rescue—Nat'l v. Planned Parenthood*, 975 S.W.2d 546, 560 (Tex. 1998).

### A.    Appellee established the existence of a wrongful act.

While Appellant states his first appellate issue relates to a lack of evidence related to the "imminent harm" element, he seems to thereafter argue that A.C.B. failed to establish a different element—"a wrongful act."

To the contrary, at trial, A.C.B. offered the following evidence to establish a wrongful act: 1) after the shocking suicide of her step-mother, the family gathered to process the situation and console one another (RR, I, p. 16); 2) during the evening, alcohol was consumed casually by both parties (RR, I, p. 17); 3) later in this

emotional evening, the parties began kissing (RR, I, p. 19); 4) while kissing, A.C.B. asked Appellant to stop (RR, I, p. 19); 5) after asking Appellant to stop, A.C.B. felt pressure on her neck from Appellant's hands—which was the last thing she remembered before being woke up the next day (RR, I, p. 19); 6) at the time of these events, A.C.B. did not feel intoxicated, but did feel significantly disoriented (RR, I, p. 19); 7) she awoke without her underwear on, and with pain in her groin and neck (RR, I, p. 19-20); 8) A.C.B. had no recollection of having sexual intercourse with Appellant (RR, I, p. 19-20); 9) A.C.B. had symmetrical bruises on her neck the next day (RR, I, p. 24); 10) Appellant admitted to having sexual intercourse with A.C.B. (RR, I, p. 22, p. 55); and 11) A.C.B. did not consent to having sexual intercourse with Appellant (RR. I, p. 26). The Trial Court was the sole judge of the credibility and demeanor of the witnesses before it. In part from this evidence, as well as all the other evidence, the Trial Court determined that A.C.B. established and prevailed on her assault claim—a wrongful act.

On the issue of credibility, Appellant did not do himself any favors. He was highly evasive about: 1) his prior diagnoses for mental illness (RR, I, p. 45-46, 51); 2) his prior prescription medications for mental illness (RR, I, p. 47); 3) his current prescription medications on the day of trial (RR, I, p. 47); and 4) whether he had been diagnosed with any type of substance abuse problems (RR, I, p. 50-51). Although he denied choking or causing her to pass out, Appellant admitted that he

had the military skills and training to apply pressure to the neck of another person to do so (RR, I, p. 56).

Therefore, if Appellant's complaint is that A.C.B. failed to establish a wrongful act, and that failure necessarily results in a lack of imminent harm, that complaint fails for the reasons noted above.

However, if that is not his complaint, Appellant then seems to assert that proof of an imminent new assault would be required to satisfy the imminent harm prong. However, Appellee should not be required to establish that Appellant was an imminent threat to assault her again in order to obtain a permanent injunction keeping him away from her. A prior physical altercation (especially an assault of a sexual nature) and the reasonable belief that the parties should be permanently enjoined from future contact in order to reduce the likelihood of continuing assaults, confrontations or anxiety of such things is a prudent use of the injunctive remedy, and generally common sense. After establishing that it happened in the past, the "imminent harm" here is the permanent anguish and anxiety of having on-going contact or communication with a person who sexually assaulted you, and the unspeakable horror of the prospect that it could happen again.

Whether or not criminal charges were filed with law enforcement, whether a law enforcement agency accepted those criminal charges, whether Appellant was formerly charged or indicted, and whether Appellant was convicted of those charges

are all irrelevant issues to her claims of civil assault. *Ater v. Ellis*, 227 S.W. 222 (Tex.Civ.App.—Amarillo 1921, writ dismissed w.o.j.) (a party may be liable for damages even though he may, under the facts, be relieved from responsibility for criminal assault).

Accordingly, this Court should affirm the injunction.

**ISSUE NO. 2 RESPONSE:** **The Trial Court's award of actual damages in the amount of $10,000.00 to A.C.B. was reasonable, and supported by the law and evidence.**

In addition to her actual damages, A.C.B. pled for exemplary damages and attorney's fees in her petition, but requested neither at trial. Moreover, nothing in the record or in the Court's Judgment suggests that the Trial Court awarded either. Appellant's complaint is simply inaccurate. Those facts alone should resolve this Issue. For ease of reference, the Court's ruling on the record is set forth as follows:

> *"In Cause Number 94755, Plaintiff versus Richard Homan Drew, III, the Defendant, trial court finds in favor of Plaintiff A.C.B. as against the Defendant Richard Homan Drew, III.*
>
> *Specifically, the trial court finds by a preponderance of the evidence presented here in court, along with any reasonable inferences drawn therefrom that the Plaintiff has proved her case by a preponderance of the evidence, that is, the greater weight and degree of credible evidence, the so-called tipping of the scales.*
>
> *Trial court further finds that she's met all the elements for demonstrating that on the date in question, Defendant Mr. Drew, knowingly or intentionally caused an assault against Plaintiff, to-wit, a sexual assault, nonconsensual sex.*

*In terms of remedies, the trial court hereby makes all the necessary predicate findings for a permanent injunction, and, therefore, at this time, Richard Homan Drew, III, you are hereby permanently prohibited and enjoined from the following conduct:*

*Number 1, contacting or communicating directly or indirectly with Plaintiff A.C.B., by any method of communication, including telephone, cellular telephone, email, text, letter or social media platform;*

*Number 2, coming within or being within 1000 feet of her presence at any location;*

*And Number 3, you're further enjoined, prohibited from coming within or being present within 1000 feet of her residence, current residence being 5613 Cornelia Court, Midlothian, Texas.*

*I want to be clear that there's no injunction in any way, shape or form with respect to Joseph Brookshire and any prior Restraining Order or Injunction is hereby lifted with respect to.*

*Mr. Drew, I understand that currently you are not represented in the probate and you are free to contact Mr. Brookshire or Mr. Brookshire's attorney within the rules that are established by the Probate Court. So, no injunction in favor of Joseph Brookshire.*

*In terms of monetary damages, there was very little testimony concerning damages. At the end of the day there's no amount of money that could compensate A.C.B. for the injury sustained, however, trial court deems that the pain, suffering, mental anguish, any other damages as testified to that an award of $10,000 in favor of A.C.B. as against the Defendant Richard Drew, III would be substantiated and justified and proved out also by a preponderance of the evidence.*

*Though the testimony, the evidence in this case could demonstrate that the damages may be higher, they need to be limited within a reasonable amount as testified to, and although this is a civil matter <u>and not a criminal matter, for collateral purposes,</u> I note that the maximum fine for any felony is up to $10,000.*

*That is the judgment, ruling of the court. There are a number of other essential findings that may be included as part of this Judgment, so this is for big picture ruling purposes only, and I certainly reserve the right to fill in any of the other necessary prerequisite information that would comprise a judgment under Texas law.*

*Mr. Willett, you're the prevailing party. I would ask that you submit a proposed judgment, including a Permanent Injunction in accordance with the trial court's overall ruling."(emphasis added).*

RR, I, p. 84-86.

It is also clear from this Record that the Trial Court did not impose a criminal fine on the Appellant.

As no findings of fact or conclusions of law were requested or entered, this Court should imply all findings necessary to support the judgment as rendered. *Sixth RMA Partners v. Sibley,* 111 S.W. 3d 46, 52 (Tex. 2003).

Ample evidence was presented at trial of the awful effects of this event on A.C.B. As noted previously, she suffered physical soreness in her groin and neck (RR, I, p. 22), had dark symmetrical bruises on her neck consistent with finger marks (RR, I, p. 24), sought medical treatment at Parkland Hospital where she underwent rape kit testing, sought follow-up treatment with multiple doctors and gynecologists (RR, I, p. 25), withdrew from college, lost her job (RR, I, p. 27), started taking antidepressants, sought counselling, moved into a gated community with her parents (RR, I, p. 28), and was unable to sleep or rest well (RR, I, p. 28).

These are the actual damages one would expect in an assault. It should also be noted that the evidentiary bar for recovery of assault damages is even lower. *DeLeon v. Hernandez,* 814 S.W. 2d 531 (Tex. App.—Houston [14th Dist.] 1991) (the fact that Plaintiff failed to seek medical treatment or report the offense to police does not defeat a cause of action for assault as a matter of law). Additionally, an appellate court should not interfere with an assault finding where the evidence is sufficient to support a judgment or verdict, even though there may be evidence to the contrary.

*Fulmer v. Thompson*, 573 S.W. 2d 256 (Tex.Civ.App.—Tyler 1978, writ refused n.r.e.). This Court should overrule Appellant's Issue No. 2.

## III. Appellant's Brief—Lack of Specificity and Consistency

An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to the record and caselaw TEX.R.APP. P. 38.1(h). Courts must interpret this requirement reasonably and liberally. *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex.2004). However, parties asserting error on appeal must put forth some specific argument and analysis showing that the record and the law supports their contentions. *See* TEX.R.APP. P. 38.1(h); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 337 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

While Appellee's comments herein are in no way an attempt to cast dispersions on the quality of the work in Appellant's Brief, it is just that—*extremely brief*. The Argument section addressing <u>both</u> issues is only fourteen (14) sentences in total—four (4) of which just quote boiler plate law (Appellant's Brief, p. 7-8). Moreover, the stated "Issues" are inconsistent and do not really track the actual arguments. Issue No. 1, as stated, focuses on a lack of "imminent danger" (notably, not "imminent harm" as cited) (Appellant's Brief, p. 5), but the Argument addresses the "existence of a wrongful act" element. It is difficult to discern, but Appellant seems to be actually arguing that A.C.B.'s failure to establish a "wrongful act"

should result in a finding that there is also no "imminent danger" or "imminent harm"—but it is unclear. Given this type of consistent confusion, it is very difficult to respond in a detailed or meaningful way for this Court without more elaboration from Appellant.

On Issue No. 2, Appellant simply frames his complaint in the Table of Contents as being that there was "no evidence" of any "damages" at trial (Appellant's Brief, p. 3). Then, in the Summary of Argument section of his Brief, he flips the order of the two Issues Presented and specifically references a complaint related to "exemplary damages" and "attorney's fees," but also suggests that the Trial Court imposed a criminal fine by its award (Appellant's Brief, p. 6). Then, the actual Argument only complains that the Trial Court improperly awarded "exemplary damages" in its Judgment—which it did not do (Appellant's Brief, p. 7-8). Which is it?

Counsel for Appellee has serious and respectful concerns that he has not fully responded to this Appeal. Those concerns are based on a lack of guidance and general confusion as to the nature and details of Appellant's actual complaints. It is, after all, Appellant's obligation to set forth a viable and coherent argument. Appellant's Brief: 1) vascilates in description; 2) randomly conflates a variety of issues; 3) is presented in one general argument without delineation between the two Issues Presented; and 4) barely scratches the surface of the evidence and caselaw in

only a handful of sentences. In summary, Appellee also seeks relief from this Court via either affirmance of the Trial Court's decision or additional instructions to Appellant to provide more adequate and specific briefing of his points of appeal, such that Appellee can have the benefit of due process and adequate notice of the Issues raised in her defense of the Trial Court's Judgment.

## PRAYER FOR RELIEF

Appellee prays that the underlying order of the Trial Court be affirmed in all respects.

SIGNED AND DATED this the 4th day of June 2018.

Respectfully submitted,

**WRAY, WILLETT & STOFFER, PLLC**

By: ___/s/ Jason M. Willett_____
    Jason M. Willett
    State Bar No. 00788669
    200 A North Rogers Street
    Waxahachie, Texas 75165
    Telephone: (972) 938-1850
    Facsimile: (972) 937-6844
    Email: jason@elliscountylaw.com

**ATTORNEYS FOR APPELLEE**
**A.C.B.**

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the total number of words in the document, including all pages, does not exceed 3,985 words, as computed by the undersigned's Microsoft Word 2010 software.


_____/s/ Jason M. Willett_____

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 4th day of June 2018, a copy of the foregoing was served on the following counsel for Richard H. Drew, III.

*Via E-Filing:  danielbarneslaw@gmail.com*
*Via Facsimile: 972-923-9606*
Mr. Daniel L. Burns
Attorney at Law
306 Sixth Street
Waxahachie, Texas 75165

        /s/  Jason M. Willett
        Jason M. Willett